1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                        ----oo0oo----

11

UNITED STATES OF AMERICA,          NO. CR. 07-473 WBS

12
                 Plaintiff,         FINDINGS OF FACT, CONCLUSIONS OF
13                                   LAW, AND ORDER RE: MOTION TO
                                     SUPPRESS
14        v.

15

16   JAVIER GARCIA,

17                 Defendant.
     _____/

18                        ----oo0oo----

19        This matter came on for hearing on June 23 and 24,

20   2009, on defendant's motion to suppress statements.  The court

21   heard the testimony of witnesses and the arguments of counsel.

22   Because the prosecuting attorney could not resist interrupting

23   while the court was attempting to state its findings of fact and

24   conclusions of law orally on the record, the proceedings were

25   adjourned, the motion was taken under submission, and the court

26   now makes its findings and conclusions in writing as follows.

27        On October 2, 2007, Forest Service Officer Gregory Knox

28   was flown in by helicopter to assist in the eradication of a

                                  1

marijuana garden near California Highway 32 in the Lassen
National Forest.  After he was informed that several Hispanic
males had run away from the garden, he was involved in the search
for the suspects.

At about 6:30 that evening a passing motorist informed
Knox that a Hispanic male was observed hitchhiking toward Chico
on the side of the highway.  Knox proceeded to the area and
encountered defendant, Javier Garcia.

1.  <u>The initial stop of defendant was legal.</u>

Officer Knox had been information that there was a
marijuana garden in the area.  There is a question as to how far
away it was from where he encountered defendant, but five to
eight miles seems to be the testimony.

He had information that five Hispanic males were seen
leaving the area the preceding day.  He knew that some of them
had fled to a creek.  When he encountered defendant, defendant
was wet, he was carrying a blanket, and he smelled of marijuana,
not marijuana smoke, but the kind of smell that comes from
growing marijuana plants.  At that point, he was entitled to stop
and ask defendant who he was, and he did that.

Defendant told one story about his car having broken
down further up the road.  Knox knew that was not true because he
had just been up that road, and there was no car broken down.
Defendant then changed his story and said that he was with
somebody, and that he got abandoned and he wanted to get to Chico
to make a telephone call.

At that point, in the court's view, there were not only
reasonable grounds for detention, there would have been probable

2

1  cause to arrest.

2            2.  <u>The subsequent detention was legal.</u>

3            The court finds that the detention of approximately 20

4  minutes on the side of the road was not an unreasonable period of

5  time.  The court has had occasion to try to talk to defendant,

6  and it is difficult to get information from him.  It is difficult

7  to communicate statements to defendant.  Further, Knox had to get

8  instructions from Forest Service Special Agent Anthony Magarrell

9  as to what to do with defendant.  The detention was reasonable.

10           3.  <u>Defendant was in custody while in the car.</u>

11           Special Agent Magarrell communicated with Knox by

12 radio, through another officer, and advised him to transport

13 defendant to Red Bluff.   The court finds that after defendant

14 was placed in Officer Knox's vehicle, he was in custody.  The

15 court frankly does not believe that under the circumstances these

16 officers would have intended simply to take these men and give

17 them a free ride an hour and a half away to Red Bluff when they

18 knew exactly what Magarrell and Knox and apparently the other

19 officers knew about this marijuana garden.  They had been there,

20 they had seen it.

21           They knew that five Hispanic males had fled, some of

22 them were even part of that chase, and here they encountered

23 Hispanic males wandering around in that area with no other

24 explanation for why they should be there.  They talked to them,

25 and two or three of them admitted they were illegal aliens.  The

26 court cannot believe that law enforcement officers under those

27 circumstances would say, "Do you want a ride?  We'll take you

28 back to Red Bluff, and then we'll drop you off so that you

1 illegal aliens can go about your business and these other

2 individuals, when we have probable cause to arrest, can go free."

3     Instead, the court finds it most probable that Agent

4 Magarrell intended to have the suspects transported to Red Bluff

5 in order to interrogate them, turn at least the illegal aliens

6 over to immigration authorities, and/or place them under arrest.

7     Further, defendant was placed in shackles in Officer

8 Knox's vehicle.  It is hard to believe that after he was fleeing

9 from the scene of a crime he had committed he would volunteer to

10 go with a law enforcement officer to Red Bluff, which was some 90

11 miles way in the opposite direction from Chico where he wanted to

12 go when he was stopped by Officer Knox.  It is hard to believe

13 particularly that he would want to go there in shackles.

14          4.  <u>Defendant was interrogated by Officer Knox</u>.

15     The court finds that it was <u>not</u> Knox's intention to

16 interrogate the defendant.  Knox is not an investigator.  He is

17 an officer, whose duties do not ordinarily involve the

18 interrogation of suspects.  Further, the defendant was in the car

19 with Knox for approximately one and one-half hours.  During that

20 time there were only the few admissions that were discussed in

21 this hearing.  The court has its own experience in attempting to

22 communicate with defendant, and as shown here in court, defendant

23 can be led to say just about anything.  If Knox had intended to

24 interrogate defendant, one would have thought this defendant

25 would have made many more incriminating statements than he did.

26     "Interrogation is 'express questioning' by the police,

27 or 'any words or actions on the part of the police . . . that the

28 police should know are reasonably likely to elicit an

4

1  incriminating response from the suspect.' <u>Rhode Island v. Innis</u>,

2  446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980

3  (footnote omitted.)" <u>United States v. Hernandez</u>, 476 F.3d 791

4  (9th Cir. 2007).

5          In the vehicle on the way to Red Bluff, defendant asked

6  Knox a number of questions.  Knox also asked defendant some

7  questions.  Most of the questions Knox asked defendant could

8  fairly be characterized as conversation rather than

9  interrogation.  However, he should have known that some of his

10 questions, such as where did he get the blanket and whether he

11 knew the two other Hispanic males, were of the type that would be

12 reasonably likely to elicit an incriminating response.  As a

13 result, the court finds that, although Knox did not intend to

14 interrogate defendant, he did in fact interrogate him within the

15 meaning of the law.  Knox did not advise defendant of his <u>Miranda</u>

16 rights before interrogating him.

17         5.  <u>Defendant was subsequently interrogated by Special</u>

18 <u>Agent Magarrell.</u>

19         About a half hour after arriving in Red Bluff,

20 defendant was interrogated by Special Agent Magarrell.  It is

21 undisputed that Magarrell properly advised defendant of his

22 <u>Miranda</u> rights, that defendant indicated that he understood them,

23 and that defendant voluntarily agreed to answer Magarrell's

24 questions.  There is no evidence that Magarrell coerced any

25 statements from the defendant or that his statements were

26 involuntary.  However, the court does not find that any curative

27 steps were taken to assure defendant that anything that he said

28 in the car would not be used against him.  This does not mean,

1  however, that Knox's failure to advise defendant of his <u>Miranda</u>

2  rights in the vehicle taints the statements made by defendant in

3  the interview by Magarrell.

4      6.  <u>There was no deliberate two-step method of</u>

5  <u>interrogating defendant.</u>

6      The court is uncertain as to whether Magarrell

7  specifically instructed Knox not to interrogate defendant, but

8  the court is satisfied that Magarrell did not instruct Knox to

9  interrogate him.  The court does not find that there was a plan

10 or conscious decision on the part of Magarrell or Knox to first

11 interrogate defendant to gain admissions without advising him of

12 his rights and then to use those admissions to their advantage in

13 reinterviewing the defendant after later advising him of his

14 rights.

15     In <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985), cited by

16 counsel, the Supreme Court distinguished between conduct that

17 actually infringed the defendant's constitutional rights and

18 conduct that amounted to no more than a departure from the

19 prophylactic standards laid down in Miranda.  In the case of the

20 former, the Supreme Court pointed out that the <u>Wong Sun</u> doctrine

21 would require the suppression of the fruits of that actual

22 infringement of the defendant's constitutional rights.  In the

23 case of the latter, however, the Supreme Court said in the

24 absence of any coercion or improper tactics, the failure to

25 comply with <u>Miranda</u> in the initial interview would not taint a

26 subsequent voluntary statement or confession.

27     Here the court does not find that Officer Knox's

28 conduct was intended to violate the defendant's constitutional

6

1   rights.   Nor does the court find that any of defendant's

2   statements to Knox were coerced in violation of the Fifth

3   Amendment.   Therefore, under <u>Elstad</u>, any failure of Knox to

4   advise defendant of his constitutional rights did not affect

5   statements made by defendant to Magarrell subsequently after

6   Garcia was advised of his rights as per <u>Miranda</u>.

7          The plurality decision of the Supreme Court in <u>Missouri</u>

8   <u>v. Seibert</u>, 542 U.S. 600 (2004), relied upon by defendant,

9   creates an exception to <u>Elstad</u> only where law enforcement

10  officers deliberately use a two-stage interrogation process,

11  withholding the <u>Miranda</u> warning until after the defendant

12  confesses and then having him repeat the confession after the

13  warning is later given.   Otherwise, <u>Elstad</u> applies.   See <u>United</u>

14  <u>States v. Wauneka</u>, 842 F.2d 1083, 1086-87 (9th Cir. 1988); <u>United</u>

15  <u>States v. Leon Guerrero</u>, 847 F.2d 1363, 1366 (9th Cir. 1988).

16         IT IS THEREFORE ORDERED that the statements made by

17  defendant to Officer Knox while in the vehicle on the way to Red

18  Bluff are hereby SUPPRESSED, but the motion to suppress evidence

19  of the statements made to Special Agent Magarrell after defendant

20  was advised of his <u>Miranda</u> rights is hereby DENIED.

21  DATED:   June 25, 2009

22

23  _____

24  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

25

26

27

28

7